**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF ALABAMA**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **LOSAL UNLIMITED, LLC** | ) | |
| | ) | |
| **PLAINTIFF,** | ) | |
| | ) | |
| **v.** | ) | **CASE NO.:3:05-cv-01144-WKW-SRW** |
| | ) | |
| **SOUTHERN AIRCRAFT SALES, et al.,** | ) | |
| | ) | |
| **DEFENDANT.** | ) | |

**BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT OF**
**DEFENDANTS SOUTHERN AIRCRAFT SALES AND SID HALL[1]**

Come now Defendants Southern Aircraft Sales and Sid Hall, by and through the undersigned counsel, and respectfully submit this Brief in Support of their Motion for Summary Judgment.

**STATEMENT OF FACTS**

This case arises out of Plaintiff's purchase of a used 1976 aircraft from Defendants. In Plaintiff's Third Amended Complaint, Plaintiff alleges that it purchased a Beech C23 Sundowner Aircraft (N9185S) from Sid Hall and Southern Aircraft Sales, Inc. on or about July or August 2002. Doc. 26. During pre-sale communications, Plaintiff alleges that Defendants, Sid Hall and Southern Aircraft Sales, represented to Plaintiff that the aircraft was airworthy, had just received a complete engine overhaul, and had been subjected to

---

[1]Defendant 16J or 16 Juliette, has apparently been served by publication, but has never filed a response to any of Plaintiff's complaints.

and passed a recent annual inspection.  Doc. 26, para. 4.  Plaintiff further alleges that, in

reliance upon the aforesaid representations, the Plaintiff purchased the aircraft for a

purchase price of $58,000.00 and that this purchase would have been finalized sometime

in July or August 2002.  Doc. 26, para. 5.  Plaintiff further alleges that:

> After taking possession of the aircraft, Plaintiff learned that the engine
> case was cracked and unrepairable, and that various essential internal engine
> parts were rusted, worn, and otherwise deteriorated.  This discovery was
> allegedly first made in April, 2004, by an aircraft technician in the course of
> performing a repair of an oil leak.  Plaintiff further learned that the tail
> section of the aircraft had been replaced following a crash and that
> numerous components of the airframe were badly corroded.  This discovery
> was first made in approximately July, 2005, in connection with the purchase
> and anticipated installation of a rebuilt engine required as a result of the
> condition of the engine in the plane at the time it was purchased.  Plaintiff
> further learned that at approximately that same time that the aircraft was not
> airworthy as a consequence of the aforesaid conditions.  These facts about
> the engine and aircraft were not discovered until April, 2004 and July, 2005
> respectively, because Defendant 16J improperly performed, and/or falsely
> claim to have performed an annual inspection of the aircraft after which it
> certified the aircraft as airworthy as of September 18, 2003.  This false
> inspection report was issued by Defendant 16J acting in concert with and/or
> at the discretion of Defendants Sid Hall and Southern Aircraft Sales.

Doc. 26 para. 6.

On or about July 29, 2002, Plaintiff entered into an "Aircraft Purchase Order" with

Southern Aircraft Sales to purchase a 1976 Beech C23, Registration number N9185S, Serial

Number M1799 for a purchase price of $56,750.00.  The Aircraft Purchase Order is signed

by Sid Hall on behalf of the seller and by Trey Salatto, as member of LOSAL on behalf of

the purchaser.  Ex. A.  The Aircraft Purchase Order is a one page document with text on

the front and back of the document.  Ex. A; Ex. B. On the front side of the document, the

following paragraph is set forth in all caps:

THE UNDERSIGNED PURCHASER AGREES THAT HE HAS READ AND UNDERSTANDS THE TERMS, CONDITIONS, WARRANTY AND LIMITATIONS OF LIABILITY SET OUT ON THE REVERSE SIDE HEREOF AND THAT THE SAME ARE INCLUDING IN AND ARE A PART OF THIS PURCHASE ORDER ALL AS IF SET FORTH ON THE FACE HEREOF.

On the back side of the document paragraph 9 states in all caps as follows:

THE SOLE WARRANTY MADE WITH RESPECT TO THE PRODUCTS SOLD HEREIN IS THAT MADE AND GIVEN BY MANUFACTURER AS SET FORTH IN MANUFACTURER'S CURRENT WARRANTY FORM. EXCEPT AS EXPRESSLY SET FORTH IN SUCH WARRANTY FORM, NO WARRANTY, WHETHER OF MERCHANTABILITY, FITNESS FOR PURPOSE OR OTHERWISE, EXPRESS OR IMPLIED OR IN FACT OR BY LAW, IS GIVEN BY SELLER WITH RESPECT TO ANY OF THE PRODUCTS, AIRPLANES, AND/OR PARTS SOLD HEREIN, AND NO OTHER OR FURTHER OBLIGATION OR LIABILITY SHALL BE INCURRED BY SELLER BY REASON OF THE MANUFACTURE, MODIFICATION, ALTERATION, SALE OR THE LEASE OF ANY AIRPLANE OR PART OF ITS USE, WHETHER FOR BREACH OF ANY WARRANTY, NEGLIGENCE OF MANUFACTURE OR OTHERWISE, SAID PRODUCTS, AIRPLANES, AND/OR PARTS SOLD HEREIN ARE SOLD BY SELLER TO BUYER IN ITS CURRENT CONDITION, AS IS, WITH ALL FAULTS, IF ANY, WITH THE EXPRESS UNDERSTANDING OF BUYER.

Ex. B-2.

Paragraph 10 of the reverse side of the "Aircraft Purchase Order" further states, in

all caps, as follows:

THE OBLIGATIONS OF SELLER SET FORTH IN MANUFACTURER'S CURRENT WARRANTY FORM SHALL BE THE EXCLUSIVE REMEDY OF BUYER FOR ANY BREACH OF WARRANTY. IN NO EVENT SHALL SELLER OR MANUFACTURER BE LIABLE FOR ANY GENERAL, CONSEQUENTIAL OR INCIDENTAL DAMAGES, INCLUDING, WITHOUT LIMITATION ANY DAMAGES FOR LOSS OF USE, LOSS OF PROFITS, OR COST OF REPAIR.

Ex. B-2.

In accordance with FAA Regulations, all aircraft are required to maintain separate

logs for the airframe, each engine, and each propeller. FAR §43.9.   The airframe and engine logs for the subject aircraft are attached hereto as Exhibits C and D, respectively.

The aviation industry is governed by the Federal Aviation Administration (FAA). The Federal Air Regulations (FAR's) dealing with civil aviation are located primarily at 14 C.F.R. §43 and 14 C.F.R. §91.  FAR §43.2 prescribes the method and manner of recording any overhaul or rebuilding of an aircraft (i.e. logs).  FAR §43.7 authorizes which persons can approve aircraft, airframes, aircraft engines, etc. for return service after maintenance, rebuilding or alterations.  FAR §43.9 prescribes the content, form and disposition of maintenance, preventative maintenance, and rebuilding an alteration records (i.e. logs). FAR §43.11 prescribes the content, form and disposition of records for inspections conducted under §91, among others (again relating to log entries).  FAR §43.12 prescribes penalties for falsification, reproduction or alteration of maintenance records (i.e. logs). FAR §91.7 states that it is the pilot in command of a civil aircraft who is responsible for determining whether that aircraft is in a condition safe for flight.  FAR §91.403 states, among other things, that the owner or operator of an aircraft is primarily responsible for maintaining that aircraft in an airworthy condition.  FAR §91.407 states that no person may operate an aircraft that has undergone maintenance, preventative maintenance, rebuilding, or alteration unless it has received the return to service authorizations and appropriate record entries as required by FAR §43.7, §43.9 and §43.11.  FAR §91.409 speaks to the requirements of an aircraft undergoing an Annual Inspection and 100 hour inspections. This is just the tip of the iceberg.  Virtually every aspect of aviation is covered by an appropriate Federal Air Regulation, and an aircraft's logs are an essential part of the FAA's

governance of the aviation industry.

The first entry in both the airframe and engine log is dated May 28, 2002 and are each made by Stephen J. Barry, A&P[2] Lic. 594528827 of Aerotrace, Inc., 500 Airport Drive West, Sebastian, Florida 32958, USA.  Each of the entries detail a major overhaul of both the airframe and the engine. Ex. C and D. In the airframe log, Mr. Barry, at the conclusion of his description of the major overhaul certifies that "this aircraft has been inspected in accordance with a 100 HR inspection and was determined to be in an airworthy condition."  Ex. C, Pg. 4.  In the engine log, Mr. Barry makes an identical entry as to airworthiness. Ex. D.  Mr. Barry further states that the engine is '0' SMOH (meaning "zero hours since major overhaul"). Ex. D.

The next entry in both the airframe and engine log is entered by John Rothen, A&P 2638963 IA[3] on June 10, 2002.  In his entries, Mr. Rothen certifies that the engine and aircraft have been inspected in accordance with an Annual Inspection with no defects noted and approved for return to service.  Ex. C; Ex. D.

On March 24, 2003, Luther E. Herndon, A&P 257926689 performed maintenance on the aircraft and certified the aircraft to be in an airworthy condition at that time.  Ex. C; Ex. D.

On September 18, 2003, Luther E. Herndon, A&P 257926689 performed a 100 hour

---

[2]"A&P" is an abbreviation for Airframe and Powerplant technician, a designation created by the FAA.

[3]"IA" is an abreviation for Inspection Authorization, another designation created by the FAA.

inspection on both the airframe and the engine.  At the conclusion of his inspection, he certified both the airframe and the engine to be in an airworthy condition at that time. Ex. C; Ex. D.

Also on September 18, 2003, Ray Allen, A&P 258643895 IA performed an Annual Inspection on the aircraft and certified that both the airframe and the engine had been inspected in accordance with an Annual Inspection and were determined to be in an airworthy condition at that time.  Ex. C; Ex. D.

On December 11, 2003, Gary Johnson, A&P 527212073 performed maintenance on the engine wherein he drained the engine oil, cleaned the oil screens and refilled with engine oil.  He then ran the engine and found no leaks at that time.  Ex. D.

On December 15, 2003, Gary Johnson, A&P 527212073 removed a defective fuel pump switch and installed a new one.  See Ex. C.

The last entry in either the airframe log or the engine log is in the engine log and is dated May 16, 2005 and was entered by Aviation Engines, Inc. wherein they performed an overhaul of the engine. Ex. D.

Plaintiff disclosed as it's **non-retained** expert Paul Polhemus of the Aviation Department of Auburn University.  A copy of Mr. Polhemus' expert witness disclosure with attachment is attached hereto as Exhibit E.  Mr. Polhemus performed an inspection of the aircraft on August 8, 2005, some three years after the Plaintiff's purchase of the aircraft.  The "Expert Witness Disclosure," signed only by counsel for Plaintiff, states that "Mr. Polhemus will testify that as of the date this inspection was conducted, the aircraft made the subject of this lawsuit was not airworthy, and that the conditions which caused

it not to be airworthy would have been present at the time the aircraft was purchased from Defendants, Southern Aircraft Sales and Sid Hall, i.e., approximately August 1, 2002." Ex. E. To the contrary, Mr. Polhemus' inspection report, signed by Mr. Polhemus, does not address whether the aircraft was airworthy as of August 1, 2002, nor does it address whether the conditions which caused the aircraft not to be airworthy in August 2005 would have been present at the time the aircraft was purchased from Defendants in or about August 2002. Ex. E.

Moreover, Paul Polhemus, A&P 416962669, has provided an Affidavit in this matter. Exhibit F. In it he states that, "[w]ith regard to the engine's cracked case, I have no opinion as to whether any problems with the engine would have existed in or about August 2002 which may have led to the cracked case or which would have rendered the aircraft not airworthy. Ex. F, para. 6. He also states that, "[w]ith regard to the various problems of the airframe noted in my report, I have no opinion as to whether the problems that I noted would have existed in or about August 2002 to such an extent as to render the aircraft not airworthy at that time. Ex. F, para. 7.

Plaintiff's Complaint alleges causes of action for (1) fraud and suppression, (2) breach of contract,( 3) breach of express and implied warranties, and (4) negligence or wantonness. Doc. 26.

## <u>STANDARD OF REVIEW</u>

Under Rule 56(c) of the *Federal Rules of Civil Procedure*, summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any

material fact and that the moving party is entitled to a judgment as a matter of law." Fed.

R. Civ. P. 56(c). "An issue of fact is 'genuine' if the record as a whole could lead a

reasonable trier of fact to find for the nonmoving party. An issue is 'material' if it might

affect the outcome of the case under the governing law." *Redwing Carriers, Inc. v. Saraland*

*Apartments*, 94 F.3d 1489, 1496 (11th Cir.1996) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S.

242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986)). "A genuine issue of material fact does not

exist unless there is sufficient evidence favoring the nonmoving party for a reasonable jury

to return a verdict in its favor." *Chapman v. AI Transp.*, 229 F.3d 1012, 1023 (11th Cir.2000)

(en banc) (quoting *Haves v. City of Miami*, 52 F.3d 918, 921 (11th Cir.1995) (internal

quotation marks and citations omitted)).

The party seeking summary judgment "always bears the initial responsibility of

informing the district court of the basis for its motion, and identifying those portions of

'the pleadings, depositions, answers to interrogatories, and admissions on file, together

with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue

of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d 265

(1986). The movant can meet this burden by presenting evidence showing there is no

dispute of material fact, or by showing the nonmoving party has failed to present evidence

in support of some element of its case on which it bears the ultimate burden of proof. *Id.*

at 322-23, 106 S. Ct. 2548.

Once the moving party has met its burden, Rule 56(e) "requires the nonmoving

party to go beyond the pleadings and by [its] own affidavits, or by the 'depositions,

answers to interrogatories, and admissions on file,' designate 'specific facts showing that

there is a genuine issue for trial.' " *Id.* at 324, 106 S. Ct. 2548. To avoid summary judgment,

the nonmoving party "must do more than simply show that there is some metaphysical

doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574,

586, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986).  After the nonmoving party has responded to

the motion for summary judgment, the court must grant summary judgment if there is no

genuine issue of material fact and the moving party is entitled to judgment as a matter of

law. *See* Fed. R. Civ. P. 56(c).

## ARGUMENT

### I.  Fraud and Suppression

#### A.    The Statute of Limitations Has Expired as to Plaintiff's Claims for Fraud and Suppression

The statute of limitations for fraud and suppression in Alabama is two years.  *Ala.*

*Code* § 6-2-38(l)("All actions for injury to the person or rights of another not arising from

contract and not specifically enumerated in this section must be brought within two

years."); *see also Foremost Ins. Co. v. Parham,* 693 So.2d 409, 417 (Ala.1997) (Under Alabama

law, "[c]laims of fraudulent misrepresentation and suppression are subject to a two-year

statute of limitations.").  Paragraph 4 of Plaintiff's Third Amended Complaint indicates

that the alleged misrepresentations were made "within approximately 90 days prior to the

date the Plaintiff agreed to purchase the aircraft, which occurred in July or August 2002."

Plaintiff filed his original Complaint in this matter on December 2, 2005.  Thus, the two

year statute of limitations clearly expired.

Plaintiff apparently attempts to invoke the savings clause of Section 6-2-3, Code of Alabama, 1975 in Paragraph 6 of Plaintiff's Third Amended Complaint. Doc. 26, para. 6. The savings clause is available only when the Plaintiff's discovery of the alleged fraud is inhibited by the Defendant's fraudulent concealment. *Smith v. National Security Insurance Company* 860 So. 2d. 343 (Ala. 2003), <u>see also</u> *Miller v. Mobile County Bd. of Health*, 409 So.2d 420 (Ala. 1981).

In *Smith*, the Plaintiff alleged insurance fraud. The Complaint was filed four years after the alleged fraud took place. The Plaintiff claimed tolling was appropriate because the fraud was "of a continuing nature" and because she did not begin investigating until the period had lapsed, when she "first heard in her community that there may [have been] something wrong with her insurance policy." The Alabama Supreme Court held that tolling was not sufficiently pled because "[Plaintiff's] Complaint 'fails to allege any of the facts or circumstances by which the appellee's concealed the cause of action or injury' and 'fails to allege what prevented [Smith] from discovery facts surrounding the [fraud].'" *Smith*, 346 - 347. The Eleventh Circuit, in discussing the *Smith* case, stated that, "[t]he implication of the Alabama Supreme Court's language is clear: because the Plaintiff did not plead fraudulent concealment, she may not invoke Ala. Code Section 6-2-3 in a fraud case." *Henderson v. Washington Nat'l Ins. Co.* 454 F. 3d 1278 (11th Cir. 2006).

Plaintiff boldly asserts that 16J improperly performed, and/or falsely claimed to have performed an annual inspection on the aircraft on September 18, 2003. Plaintiff further asserts that this false inspection report was issued by Defendant 16J acting in

10

concert with or at the direction of Defendants Sid Hall and Southern Aircraft Sales. There is absolutely no evidence in the record to support this accusation, which, if true, would be a very serious offense in the eyes of the FAA. FAR §43.12. Furthermore, Sid Hall, in his Affidavit states that he has no ownership interest, or interest of any kind, in the former business known as 16J or 16 Juliette. Ex. B. He further states that he was simply a customer of 16J with regard to servicing and maintaining the aircraft owned by Southern Aircraft Sales, and that Southern Aircraft Sales paid 16J for the services it performed on its aircraft. Ex. B.

Thus, there is no basis to support Plaintiff's claim of fraudulent concealment. Therefore, the statute of limitations has expired and Defendants are entitled to summary judgment as to Plaintiffs allegations of fraud and suppression.

**B.**    **Plaintiff's Claim for Fraud and Suppression Must Fail Where Defendants Have Not Misrepresented or Suppressed Any Material Fact.**

To establish fraud by misrepresentation, the plaintiff must show 1) that the defendant made a misrepresentation; 2) that that misrepresentation concerned a material existing fact; 3) that the plaintiff relied on the misrepresentation; and 4) that the reliance was to the plaintiff's detriment. *Hughes v. Hertz Corp.*, 670 So. 2d 882 (Ala 1995).

In paragraph 7 of Plaintiff's Third Amended Complaint, Plaintiff alleges that, "[e]ach of the Defendants innocently, negligently, or intentionally misrepresented to Plaintiff that the aircraft was airworthy, had a recent complete engine overhaul, had successfully passed a recent annual inspection, and was otherwise in excellent condition." Doc. 26. The representations of Southern Aircraft Sales and Sid Hall in this regard were

not false.  In accordance with FAA Regulations, and as verified by the aircraft's engine and airframe logs, the aircraft was, in fact, airworthy (Ex. C; Ex. D), had, in fact, recently undergone a complete engine overhaul  (Ex. C; Ex. D), and had successfully passed a recent annual inspection  (Ex. C; Ex. D).  Sid Hall simply represented to the Plaintiff the information that was contained in the airframe and engine logs as required by FAA Regulations, and there is no information before this court that the information in the logs is inaccurate or has somehow been falsified.[4]

Therefore, because there is no evidence that the representations made by Sid Hall and Southern Aircraft Sales were false, the Plaintiff's claims for misrepresentation must fail.

C.    **There Exists No Confidential Relationship Between the Parties Sufficient to Support the Claim of Suppression.**

As to the suppression claim, it is not clear from the pleadings, or the evidence adduced to date, what it is that Plaintiff claims Defendants allegedly suppressed. Regardless, there was certainly no confidential relationship between the parties such as to invoke a duty to disclose.

In order to withstand a defendant's properly supported motion for summary judgment on a claim of fraudulent suppression, the plaintiff must offer substantial evidence (1) that the defendant had a duty to disclose material facts, (2) that the defendant

---

[4]If there were information before this court that the log books had been tampered with or otherwise falsified, Sid Hall, Southern Aircraft Sales and each of the members of LOSAL Unlimited, LLC would be duty bound to report such a matter to the FAA for investigation.  14 C.F.R. Sec. 43.12(a)(1).

concealed or failed to disclose those facts, (3) that the concealment induced the plaintiff to act; and (4) that the plaintiff's action resulted in harm to the plaintiff. A duty to communicate can arise from a confidential relationship between the plaintiff and the defendant, from the particular circumstances of the case, or from a request for information, but mere silence in the absence of a duty to disclose is not fraudulent. *Mason v. Chrysler Corp.*, 653 So. 2d 951 (Ala. 1995); *McGowan v. Crystal Corp.*, 631 So. 2d 842 (Ala. 1993).

Further, a party must have knowledge of a fact in order to be liable for its suppression. *McGowan*, *supra*; *Mason*, *supra*. Plaintiffs have failed to produce any evidence whatsoever that these Defendants had any knowledge regarding the Plaintiffs' apparent allegation that the aircraft was not airworthy, had not undergone a major overhaul, and had not passed a recent annual inspection. In fact, just the opposite is true. The aircraft's logs clearly indicate that the aircraft was airworthy, had recently undergone a major overhaul, and had passed a recent annual inspection. Thus, no information was suppressed.

This case is analagous to *Young v. Serra Volkswagen, Inc.*, 579 So.2d 1337, 1340 (Ala. 1991), which involved the purchase of a "demonstrator" vehicle which the Plaintiff alleged had been previously wrecked. In affirming summary judgment the court pointed to the Plaintiff's lack of proof. "[T]he record reveals an obvious failure of proof by Young; she provided no evidence that the car she purchased from Serra Volkswagen had, in fact, been damaged as a result of its being 'wrecked.' She produced no expert testimony by way of affidavit or deposition and gave no indication of proof in her pleadings that the car had been wrecked, damaged, and repaired. Her allegation that the car was damaged as a result

13

of its having been wrecked is just that, an allegation, and that allegation is not supported by the record." *Young* at 140. The court further stated that"[f]raud is never presumed, and a person  who asserts fraud has the burden of proof." *Young at 140.*

Likewise, Plaintiff at bar provides no proof that the aircraft was not airworthy, had not undergone a complete engine overhaul or had not recently passed an Annual Inspection.  Plaintiff simply makes unfounded accusations.

Based upon the foregoing, Plaintiff's allegations of fraud and suppression must fail.

**II.    Plaintiff's Claim for Breach of Contract Must Fail Where There Has Been No Breach.**

In paragraph 10 of Plaintiff's Third Amended Complaint, Plaintiff states that "Defendants entered into a contract with Plaintiff pursuant to which the Defendant agreed to sell the aforesaid aircraft to Plaintiff and further specifically agreed with Plaintiff that the aforesaid aircraft was airworthy, had recently received a complete engine overhaul, had been subjected to and passed a recent annual inspection, and was otherwise in excellent condition.  As stated above, in  accordance with FAA Regulations, and as substantiated by the aircraft's engine and airframe logs, the aircraft was, in fact, airworthy, had, in fact, recently received a complete engine overhaul, had been subjected to and passed a recent annual inspection.  Thus, Plaintiff received what it bargained for.  There was no breach.  Therefore, Defendants are entitled to summary judgment as to Plaintiff's claim for breach of contract.

**III.    Plaintiff's Claim for Breach of Express and Implied Warranties Must Fail Where Defendant Expressly Disclaimed Any Express and Implied Warranties in the**

14

**Purchase Order Agreement.**

Paragraph 15 of Plaintiff's Third Amended Complaint states that, "Defendants expressly warranted that the aircraft was airworthy, had recently received a complete engine overhaul, had been subjected to and passed a recent annual inspection, and was otherwise in excellent condition. Doc. 26, para. 15. As stated previously, according to FAA Regulations, this statement is true. Thus, there has been no breach of any express warranty, should one be held to exist based upon these representations.

As to implied warranties, a seller may exclude implied warranties by including in the contract a conspicuous written statement disclaiming those warranties. Section 7-2-316(2), <u>Ala. Code</u>, 1975. A clause is conspicuous "when it is so written that a reasonable person against whom it is to operate ought to have noticed it." Section 7-2-201(10), <u>Ala. Code</u>, 1975. Language is considered conspicuous when the print is larger or is in a contrasting type or color than that contained in the rest of the document, and that whether a clause is conspicuous is a question to be determined by the trial court. <u>Morgan Building and Spas v. Gillett</u>, 762 So.2d 366 (Ala. Civ. App. 2000); <u>Money v. Willings Detroit Diesel, Inc.</u>, 551 So.2d 926 (Ala. 1989).

As set forth in the statement of facts, seller clearly and conspicuously disclaimed any express or implied warranties other than any warranty offered by the manufacturer. The aircraft was sold "AS IS, WITH ALL FAULTS." Ex. B-2.

Based upon the foregoing, Plaintiff's claim for breach of express and implied warranties must fail.

**IV.    Plaintiff's Claim for Negligence or Wantonness Must Fail Because the Statute of**

**Limitations Has Expired and Defendants Did Not Breach Any Duty Owed to Plaintiff.**

A.    **The Statute of Limitations has Expired.**

The statute of limitations for negligence and wantonness in the state of Alabama is two years. *Ala. Code* § 6-2-38(l).  As stated previously, two years clearly elapsed from the time of the transaction in question until the filing of Plaintiff's initial Complaint.  Further, the Plaintiffs have put forward no rationale for extending the statute of limitations as to the claims of negligence and wantonness against these Defendants.  Therefore, summary judgment as to Plaintiff's claims of negligence or wantonness is due to be granted.

B.    **Defendant's did not breach any duty owed to Plaintiff.**

Paragraph 19 of Plaintiff's Third Amended Complaint states as follows:

Defendants negligently or wantonly sold the aircraft to Plaintiff in an unsafe and unreasonably dangerous condition.  Defendants undertook a duty to perform an inspection on the aforesaid aircraft and negligently or wantonly failed to conduct a proper inspection and to advise Plaintiff of the result of that inspection.  Specifically, Defendant 16J, acting in concert with and/or under the direction of Defendant Sid Hall and Southern Aircraft Sales, performed, or undertook to perform and failed to properly perform, an annual inspection on the aircraft pursuant to which Defendant 16J certified that as on September 23, 2003 the aircraft was airworthy when in fact it was not.  Defendants negligently or wantonly failed to confirm the accuracy of the information relayed to Plaintiff about the condition of the aircraft prior to sale.  As a proximate result of this negligence or wantonness, the engine block of the aircraft cracked sometime in April, 2004.

Doc. 26 para. 19.

First , there is no evidence that Defendants sold the aircraft to Plaintiff in an "unsafe and unreasonably dangerous condition." As stated previously, the aircraft was in an airworthy condition, had recently undergone a major engine overhaul and had recently

16

undergone and passed an annual inspection.  Furthermore, there is no evidence before the

court that Sid Hall or Southern Aircraft Sales undertook to perform an inspection of the

aircraft, or "act[ed] in concert" with 16J, or somehow directed 16J to perform and fail to

properly perform an annual inspection on the aircraft.  To the contrary, Sid Hall, in his

Affidavit states that Southern Aircraft Sales is in the business of buying and selling aircraft

- it does not repair or maintain aircraft, and did not perform any maintenance or repairs

on the aircraft at issue. Ex. B, para.  3. He has no ownership interest, or interest of any

kind, in 16J. Ex. B, para.  7.  He was simply a customer of 16J with regard to servicing and

maintaining aircraft owned by Southern Aircraft Sales.  Ex. B, para.  9.

Most importantly, there has been no evidence adduced to date that the Annual

Inspection of September 23, 2003 was in any way improperly performed or that the aircraft

was not airworthy on that date.  Plaintiff's bold assertions in this regard are without merit.

Based upon the foregoing, Plaintiff's allegations of negligence or wantonness must

fail.

**<u>CONCLUSION</u>**

Based upon the forgoing, no genuine issue of material fact exists as to Plaintiff's

claims, and Defendants are entitled to judgment as a matter of law.  Therefore, summary

judgment should be granted in favor of Defendants.

ADAMS, UMBACH, DAVIDSON & WHITE, LLP


/s/ Phillip E. Adams, Jr.
PHILLIP E. ADAMS, JR. (ASB-9946-D56P)

17

/s/ Matthew W. White
MATTHEW W. WHITE (ASB-6809-W83M)
Attorneys for Southern Aircraft Sales and Sid Hall
Post Office Box 2069
Opelika, AL 36803-2069
334-745-6466

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing documents has been served upon:

William Dudley Motlow, Jr., Esq.
PORTERFIELD, HARPER
MILLS & MOTLOW, P.A.
22 Inverness Center Parkway, Suite 600
P.O. Box 530790
Birmingham, AL 35253-0790

Done this the 30th day of May, 2008.

/s/ MATTHEW W. WHITE

18

OF COUNSEL