IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | |
|---|---|
| LOSAL Unlimited, LLC, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CASE NO. 3:05-CV-1144-WKW |
| | ) |
| SOUTHERN AIRCRAFT SALES, *et al.*, | ) |
| | ) |
| Defendants. | ) |

## **MEMORANDUM OPINION AND ORDER**

Before the court is Defendants Southern Aircraft Sales and Sid Hall's Motion for Summary Judgment (Doc. # 45), which is accompanied by a brief and an evidentiary submission (Doc. # 46). Plaintiff LOSAL Unlimited, LLC, filed a Submission in Opposition to Summary Judgment Motion (Doc. # 50), which includes a brief and evidence.[1]  After careful consideration of the arguments of counsel, the relevant law and the record as a whole, the court finds that Defendants' Motion for Summary Judgment is due to be granted.

### **I. JURISDICTION AND VENUE**

The court properly exercises subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(a).  The parties do not contest personal jurisdiction or venue, and the court finds adequate allegations of each.

---

[1] The court refers to Plaintiff as "LOSAL," and to Defendants individually as "Southern Aircraft" and "Mr. Hall" and collectively as "Defendants."

## II.  STANDARD OF REVIEW

Summary judgment should be granted only "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  Under Rule 56, the moving party "always bears the initial responsibility of informing the district court of the basis for its motion."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  "[T]he court must view all evidence and make all reasonable inferences in favor of the party opposing summary judgment."  *Haves v. City of Miami*, 52 F.3d 918, 921 (11th Cir. 1995).  The movant can meet this burden by presenting evidence showing there is no genuine issue of material fact, or by showing that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof.  *Celotex Corp.*, 477 U.S. at 322-23.

Once the moving party has met its burden, "an opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must – by affidavits or as otherwise provided in this rule – set out specific facts showing a genuine issue for trial."  Fed. R. Civ. P. 56(e)(2).  To avoid summary judgment, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts."  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  A genuine factual dispute exists if "a reasonable jury could return a verdict for the non-moving party."  *Damon v. Fleming Supermarkets, Inc.*, 196 F.3d 1354, 1358 (11th Cir. 1999) (internal quotation marks

and citation omitted).  After the nonmoving party has responded to the motion for summary judgment, the court must grant summary judgment if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).

### III.  BACKGROUND

#### A.  Facts

Viewed in the light most favorable to LOSAL, the facts material to resolution of the summary judgment motion are as follows.[2]  This case arises out of LOSAL's purchase of a 1976 Beechcraft Sundowner aircraft from Defendants.  Patrick J. Salatto III ("Mr. Salatto") and Joseph F. Lovvorn ("Mr. Lovvorn") are the sole owners and principals of LOSAL.  (Salatto Aff. at 1 (Ex. to Pl. Summ. J. Resp.).)  While completing their training to receive private pilot certificates from the Federal Aviation Administration ("FAA"), Mr. Salatto and Mr. Lovvorn formed LOSAL for the purpose of purchasing an aircraft.  (Salatto Aff. at 1.)  Mr. Salatto and Mr. Lovvorn's search for an aircraft led them to Southern Aircraft, a business which buys and sells aircrafts.  (Salatto Aff. at 1; Hall Aff. at 1 (Ex. to Defs. Summ. J. Br.).)  Southern Aircraft's sole shareholder is Mr. Hall.  (Hall Aff. at 1.)

Mr. Salatto had several telephone conversations with Mr. Hall regarding the purchase of a Beechcraft Sundowner aircraft, a type of aircraft with which Mr. Hall claimed a

---

[2] "An issue of fact is 'material' if, under the applicable substantive law, it might affect the outcome of the case."  *Hickson Corp. v. Northern Crossarm Co.*, 357 F.3d 1256, 1259 (11th Cir. 2004). Evidence relied upon by the parties, but omitted from this section, either is not material or, as the court forewarned in a prior Order, is not "admissible on its face," cannot "be reduced to admissible form" or does not comply with Federal Rule of Civil Procedure 56(e).  (Order at 1 (Doc. # 64).)

"particular expertise." (Salatto Aff. at 1.) Mr. Salatto, along with Mr. Lovvorn, also met with Mr. Hall at Southern Aircraft on at least two occasions. On the second occasion, Mr. Salatto and Mr. Lovvorn decided to purchase the aircraft at issue, contingent upon a favorable "pre-buy inspection." (Salatto Aff. at 2.) Mr. Hall told Mr. Salatto and Mr. Lovvorn that they should "[l]et [his] guy," Luther E. Herndon ("Mr. Herndon"), perform the pre-buy inspection.[3] (Salatto Aff. at 2; Salatto Dep. at 51-52 (Ex. to Pl. Summ. J. Resp.); *see also* Pl. Summ. J. Resp. at 2-3.) Mr. Salatto and Mr. Lovvorn agreed. Mr. Herndon reported that the aircraft was in good condition and was airworthy.[4] (Salatto Aff. at 2.)

Based on Mr. Herndon's inspection, Mr. Salatto and Mr. Lovvorn entered into an Aircraft Purchase Order with Southern Aircraft to buy the 1976 Beech C23, Registration number N9185S, Serial Number M1799, for $56,750. On July 29, 2002, Mr. Hall executed the Aircraft Purchase Order on behalf of Southern Aircraft, and, on August 1, 2002, Mr. Salatto, as a member of LOSAL, executed the purchase order on behalf of LOSAL. (*See* Aircraft Purchase Order (Ex. A to Defs. Summ. J. Br.).)

Shortly after purchase, the aircraft was delivered to LOSAL at the Auburn Airport. (Salatto Aff. at 2; Salatto Dep. at 47.) During their ownership of the aircraft, Mr. Salatto and

---

[3] Defendants dispute that Mr. Herndon worked for or was associated with Southern Aircraft (*see* Hall Aff. at 2), but, for present purposes, the court credits LOSAL's facts.

[4] As provided in the Federal Air Regulations ("FARs"), "[t]he owner or operator of an aircraft is primarily responsible for maintaining that aircraft in an airworthy condition." 14 C.F.R. § 91.403; (Defs. Summ. J. Br. at 4.) Although the parties have not cited the FAR which defines "airworthy," that term is defined in 14 C.F.R. § 3.5(a) as an aircraft which "conforms to its type design and is in a condition for safe operation."

Mr. Lovvorn stored it in Auburn, Alabama, in a hanger "shielded from the elements." (Salatto Aff. at 2.)

Airframe and engine logs accompanied the aircraft at the time of purchase.[5] In an entry dated May 28, 2002, an FAA-certified airframe and powerplant technician detailed a major overhaul of both the airframe and the engine. (Exs. C & D to Defs. Summ. J. Br.; Defs. Summ. J. Br. at 5 n.2.) In the airframe log, the technician certified that "this aircraft has been inspected in accordance with a 100[-hour] inspection and was determined to be in an airworthy condition." (Ex. C to Defs. Summ. J. Br.) In the engine log, the technician made an identical entry as to airworthiness. (Ex. D to Defs. Summ. J. Br.) The next entry in both logs, dated June 10, 2002, which was entered by a different technician, records that the engine and aircraft were inspected in accordance with the FAA's required annual inspection with no defects noted and with approval for "return to service." (Exs. C & D to Defs. Summ. J. Br.)

After LOSAL's purchase of the aircraft, Mr. Herndon performed two additional inspections on the aircraft, the results of which are recorded in the airframe and engine logs. First, on March 24, 2003, he performed an annual inspection on the aircraft and determined the aircraft to be airworthy. (Exs. C & D to Defs. Summ. J. Br.) Second, on September 18, 2003, Mr. Herndon performed a 100-hour inspection on both the airframe and the engine.

---

[5] As pointed out by Defendants, the aviation industry is governed by the FAA, and "virtually every aspect of aviation" is covered by the FARs, which are located principally at 14 C.F.R. § 43 and 14 C.F.R. § 91. (Defs. Summ. J. Br. at 4.) An aircraft's logs are an essential part of the FAA's governance of the aviation industry.

At the conclusion of his inspection, Mr. Herndon certified that both the airframe and the engine were airworthy. (Exs. C & D to Defs. Summ. J. Br.)

On January 31, 2004, Mr. Lovvorn was flying the aircraft. As he was approaching the Auburn Airport, Mr. Lovvorn detected oil blowing on the windshield. (Lovvorn Dep. at 47-48.) After landing the aircraft, he obtained the services of Auburn University Aviation to determine the source of the oil leak, and one of its technicians, Paul Polhemus ("Mr. Polhemus"), located a crack in the engine case. (Lovvorn Dep. at 49-50.) Subsequently, in connection with the work being performed on the aircraft by Auburn University Aviation, Mr. Polhemus, an FAA-certified airframe and powerplant and inspection authorization technician, prepared a report dated August 8, 2005, in which he documented problems with corrosion, some of it extensive, on various components of the aircraft's airframe, including the right wing, right fuel tank cap and lip, firewall, tail section, and cabin side panels. (Ex. E to Defs. Summ. J. Br.) In a later-filed affidavit, Mr. Polhemus attests that, based on the "cracked engine case" and the other problems he identified with the airframe, "[t]he aircraft was not airworthy as of that date, *i.e.*, August 8, 2005." (Polhemus Aff. ¶¶ 3, 5 (Ex. F to Defs. Summ. J. Br.).) He says, however, that, "[w]ith regard to the engine's cracked case, [he] ha[s] no opinion as to whether any problems with the engine would have existed in or about August 2002 which may have led to the cracked case or which would have rendered the aircraft not airworthy." (Polhemus Aff. ¶ 6.) Also, "[w]ith regard to the various problems of the airframe" listed in his report, Mr. Polhemus "ha[s] no opinion as to whether

the problems . . . would have existed in or about August 2002 to such an extent as to render the aircraft not airworthy at that time." (Polhemus Aff. ¶ 7.)

### B. Relevant Procedural History

After incurring substantial expense for the repair of the aircraft's engine,[6] LOSAL commenced this litigation on December 2, 2005. It twice has amended the complaint, most recently on June 22, 2007. The Third Amended Complaint, which is the operative complaint, sets forth four causes of action for (1) fraud and suppression (Count One), (2) breach of contract (Count Two), (3) breach of express and implied warranties (Count Three), and (4) negligence or wantonness (Count Four). (3d Am. Compl. (Doc. # 26).) Defendants are named in all counts.[7] The crux of Count One is that Defendants intentionally misrepresented "to [LOSAL] that the aircraft was airworthy, had just received a complete engine overhaul, and had been subject to and passed a recent annual inspection," (3d Am. Compl. ¶ 4), and that they "fraudulently concealed" the condition of the aircraft "by providing [LOSAL] with a false annual inspection report dated September 23, 2003" (3d Am. Compl. ¶ 7). In Counts Two and Three, LOSAL alleges that Defendants breached the purchase contract and express warranties by selling to LOSAL an aircraft that "did not conform to the description provided by [them]," that description again being that the "aircraft was airworthy, had recently

---

[6] Repairs to the engine totaled $16,000. (Pl. Summ. J. Resp. at 5-6.) The airframe, however, has not been repaired because Mr. Salatto and Mr. Lovvorn considered the repairs to be cost prohibitive. (Salatto Dep. at 81-82.) Consequently, the overhauled engine has not been reinstalled in the aircraft. (Lovvorn Dep. at 86; Salatto Dep. at 81-82.)

[7] Also named as a defendant is Sixteen Juliette, Inc., d/b/a Dawson Aviation. (3d Am. Compl. at 1.) Sixteen Juliette presently is in default. (Entry of Default (Doc. # 62).)

7

received a complete engine overhaul [and] had been subjected to and passed a recent annual inspection." (3d Am. Compl. ¶¶ 10-11, 15-16.)  Also included in Count Three is a claim that the aircraft did not conform to the warranties of merchantability and fitness for a particular purpose which LOSAL says were implied terms of the contract.  (3d Am. Compl. ¶¶ 17-18.)

Finally, in Count Four, LOSAL avers that Defendants "negligently or wantonly sold the aircraft to [LOSAL] in an unsafe and unreasonably dangerous condition."  (3d Am. Compl. ¶ 19.)  Continuing, LOSAL alleges that Sixteen Juliette, "acting in concert with" or "under the direction of" Defendants, "performed or undertook to perform and failed to properly perform, an annual inspection on the aircraft pursuant to which [Sixteen Juliette] certified that as o[f] September 23, 2003 the aircraft was airworthy when in fact it was not." (3d Am. Compl. ¶ 19.)  Similarly, LOSAL alleges that Defendants "negligently or wantonly failed to confirm the accuracy of the information relayed to [LOSAL] about the condition of the aircraft prior to sale," and that Defendants' negligence or wantonness proximately caused the aircraft's engine case to crack.  (3d Am. Compl. ¶ 19.)  LOSAL requests as relief compensatory and punitive damages.  (3d Am. Compl. at 6.)

Having answered the Third Amended Complaint and conducted discovery, Defendants filed the instant Motion for Summary Judgment on all claims against them.  LOSAL responded by asking for an extension of time to respond to Defendants' motion and for leave

8

to reopen discovery to designate a new expert witness.[8] (Pl. Mot. for Extension of Time (Doc. # 49).) The court denied LOSAL's motion, emphasizing, among other things, that "[t]his action has been fraught with delay, culminating in the court's mandate that '[n]o further extensions will be permitted.'" (Order (Doc. # 56) (citing Doc. # 44).) The court now turns to the merits of the summary judgment motion.

## IV. DISCUSSION

Defendants seek summary judgment on multiple grounds, including that the fraud and breach of contract claims are barred by the statute of limitations, that all implied warranties are properly disclaimed, and that the evidence is lacking on one or more elements of each claim. (Defs. Summ. J. Br. at 9-10, 15-16.) Notwithstanding these multiple arguments, the summary judgment motion can be decided on a single issue. The factual predicate underlying each of LOSAL's claims – fraudulent misrepresentation, fraudulent suppression, breach of contract, breaches of express and implied warranties, and negligence or wantonness – is that, when LOSAL purchased the aircraft from Defendants on August 1, 2002, the aircraft was not airworthy, had not recently received a complete engine overhaul, and had not

---

[8] LOSAL identified Mr. Polhemus as a potential expert witness in January 2008 (*see* Ex. E to Defs. Summ. J. Br.), but sought a new expert in light of Mr. Polhemus's affidavit, which Defendants filed on May 30, 2008, in support of their Motion for Summary Judgment. (*See* Pl. Mot. for Extension of Time ¶ 6.)

passed a recent annual inspection.[9] Stated differently, without such evidence, LOSAL cannot demonstrate an essential element of each of its claims, namely, (1) that Defendants misrepresented the condition of the aircraft prior to its sale to LOSAL, *see Hughes v. Hertz Corp.*, 670 So. 2d 882, 885 (Ala. 1995) (fraudulent misrepresentation); (2) that Defendants failed to disclose material facts about the condition of the aircraft, *see Mason v. Chrysler Corp.*, 653 So. 2d 951, 954 (Ala. 1995) (fraudulent suppression); (3) that Defendants sold LOSAL an aircraft on terms different from those for which LOSAL bargained, *see Ex parte Jackson County Bd. of Educ.*, ___ So. 2d ___, 2008 WL 3877736, at *3 (Ala. Aug. 22, 2008) (breach of contract); (4) that the express representations made by Defendants about the condition of the aircraft failed their essential purposes, *see Lipham v. General Motors Corp.*, 665 So. 2d 190, 192 (Ala. 1995) (breach of express warranty); (5) that the aircraft was not merchantable or fit for its particular purpose, *see* Ala. Code §§ 7-2-314 and 7-2-315 (breach of implied warranty of merchantability and fitness for a particular purpose); and (6) that Defendants sold the aircraft to LOSAL in an "unsafe and unreasonably dangerous condition"

---

[9] LOSAL does not dispute that its claims share this factual predicate. Indeed, each count of the Third Amended Complaint, as well as LOSAL's brief opposing summary judgment and evidentiary submission, focuses on Defendants' representations made to LOSAL with respect to the condition of the aircraft at the time of sale and the alleged falsities of those representations, which LOSAL says constitutes fraud, negligence and wantonness and a breach by Defendants to furnish an aircraft to LOSAL that conformed to those representations. (*See* 3d Am. Compl. ¶¶ 4, 7, 10-11, 15-16, 17-18, 19; Pl. Summ. J. Resp. at 11, arguing that "[t]he evidence . . . supports the conclusion that at the time of sale to LOSAL, [Defendants] knew the aircraft was corroded and/or was not airworthy"; Pl. Summ. J. Resp. at 16, contending that Defendants breached their agreement to provide LOSAL with an aircraft that was "airworthy, had recently had a complete engine overhaul, and had recently passed a complete annual inspection"; *see also* Pl. Mot. Ext. Time ¶ 6 (Doc. # 49), whether corrosion on the airframe existed at the time the aircraft was purchased by LOSAL is a "central issue in this case.")

or "failed to conduct a proper inspection" which would have uncovered the complained-of deficiencies, (*see* 3d Am. Compl. ¶ 19 (negligence and wantonness).)

Distilled to its essence, the single issue is whether LOSAL has presented evidence which creates a genuine issue of material fact as to whether the aircraft's deficiencies which Mr. Polhemus said rendered the aircraft unairworthy on August 8, 2005, existed three years earlier when LOSAL bought the aircraft. LOSAL says that it has, but, as explained below, the court disagrees.

LOSAL recognizes that Mr. Polhemus's affidavit contains attestations contrary to what LOSAL anticipated Mr. Polhemus would say at trial. (Pl. Summ. J. Resp. at 13; Pl. Mot. Extension Time ¶ 6.) In his affidavit, reiterating that he performed his inspection of the aircraft on August 8, 2005, Mr. Polhemus expresses "no opinion" as to whether the corrosion of the aircraft's airframe or problems with the engine "would have existed in or about August, 2002 to such an extent as to render the aircraft not airworthy at that time." (Polhemus Aff. ¶¶ 4-7.) LOSAL, however, says that there is contrary evidence which creates a jury issue as to whether the aircraft was airworthy on August 1, 2002, the date of purchase. LOSAL points to the affidavits of Mr. Salatto and Mr. Lovvorn, as well as to Mr. Lovvorn's deposition testimony. (Pl. Summ. J. Resp. at 13, 15.) Namely, Mr. Lovvorn attests, "I have heard Mr. Polhemus specifically say that the airframe corrosion would have existed prior to the time that LOSAL bought the plane on August 1, 2002, and that a properly done annual and/or pre[-]buy inspection would have detected that corrosion." (Lovvorn Aff. at 1 (Ex.

11

to Pl. Summ. J. Resp.).) Similarly, Mr. Salatto says, "Mr. Polhemus stated on more than one occasion in my presence that the corrosion would have been present when we bought the airplane and that it should have been 'caught' when prior inspections were performed on the airplane." (Salatto Aff. at 2.) LOSAL argues that Mr. Polhemus's oral statements to Mr. Salatto and Mr. Lovvorn are sufficient to create a jury issue on the question of the aircraft's airworthiness on August 1, 2002.

Defendants, though, argue that, because LOSAL seeks to introduce Mr. Polhemus's statements through Mr. Lovvorn and Mr. Salatto, the statements are hearsay and do not fit within any exception to the hearsay rule, and, thus, may not be considered on summary judgment. (Defs. Summ. J. Reply Br. at 1-3 (Doc. # 61); *see also* Defs. Mots. Strike at 1 (Docs. # 53-54).) Countering Defendants' objection, LOSAL says that Mr. Lovvorn's and Mr. Salatto's testimonies pertaining to the substance of Mr. Polhemus's oral statements constitute present sense impressions and, therefore, are excepted from the hearsay rule. Alternatively, LOSAL contends that Mr. Lovvorn's and Mr. Salatto's "testimon[ies] about what they had been told by [Mr.] Polhemus would be admissible at trial if Polhemus testified live in accordance with his affidavit, based on Rule 801(d)(1) of the Federal Rules of Evidence." (Pl. Summ. J. Resp. at 13 n.1.) For the reasons to follow, the court is unpersuaded by both of LOSAL's arguments.

"'Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Fed. R. Evid.

12

801(c). The general rule is that hearsay is not admissible, Fed. R. Evid. 802, but there are exceptions, *see, e.g.*, Fed. R. Evid. 803 & 804. One exception is for a present sense impression. Rule 803(1) provides that, regardless of the availability of the declarant as a witness, "[a] statement describing or explaining an event or condition made while the declarant was perceiving the event or condition, or immediately thereafter[,]" is "not excluded by the hearsay rule." Fed. R. Evid. 803(1). "The underlying theory of this exception is that the 'substantial contemporaneity of the event and the statement negate the likelihood of deliberate or conscious misrepresentation.'" *United States v. Scrima*, 819 F.2d 996, 1000 (11th Cir. 1987).

The reason Rule 803(1) is inapplicable is straightforward. Mr. Salatto's and Mr. Lovvorn's attestations do not shed light on whether Mr. Polhemus's statements describing the condition of the aircraft were "made while [he] was perceiving the . . . condition or immediately thereafter," *Scrima*, 819 F.2d at 1000. Neither Mr. Salatto nor Mr. Lovvorn specifies when, in relation to Mr. Polhemus's inspection of the aircraft, the alleged statements were made. Apparently, in an attempt to cure this obvious deficiency, LOSAL cites the deposition testimony of Mr. Lovvorn as "establish[ing] that the first conversation LOSAL had with Polhemus concerning the corrosion he had found was while Auburn University Aviation was in the process of reinstalling the overhauled engine" and that, therefore, "Polhemus's statements would describe and explain his perceptions and would have been substantially contemporaneous with those perceptions." (Pl. Resp. to Defs. Mots.

13

Strike at 3 (Doc. # 60), citing Lovvorn Dep. at 84-85.) In his deposition testimony, though, Mr. Lovvorn does not identify Mr. Polhemus as the speaker, or anyone else for that matter. Mr. Lovvorn refers only to "they," testifying that, after he (Mr. Lovvorn) delivered the overhauled engine to Auburn Aviation for reinstallation in the aircraft, "they" said the "plane ha[d] been in a crash" and "they" said the aircraft had "corrosion." (Lovvorn Dep. at 84-85.) Not only does Mr. Lovvorn fail to identify with whom he spoke, but assuming for the sake of argument that the individual was Mr. Polhemus, as LOSAL claims in its brief, Mr. Lovvorn also fails to pinpoint when Mr. Polhemus made the statements in relation to his inspection of the aircraft. Mr. Lovvorn's deposition testimony upon which LOSAL relies, therefore, is insufficient to bring the statements within the ambit of the present sense impression exception to the hearsay rule. In other words, there is no evidence from which it can be determined whether Mr. Polhemus's alleged statements to Mr. Salatto and Mr. Lovvorn were sufficiently contemporaneous with Mr. Polhemus's inspection of the aircraft to constitute present sense impressions.

LOSAL's reliance on Rule 801(d)(1) also is unavailing. True, the statements Mr. Polhemus allegedly made to Mr. Salatto and Mr. Lovvorn with respect to his opinion about the onset of the aircraft's corrosion would be admissible to impeach Mr. Polhemus if he testified at trial and his trial testimony was inconsistent with these earlier statements. *See* Fed. R. Evid. 801(d)(1)(A). This circuit has held, however, that potential impeachment evidence is not substantive evidence which can defeat a properly-supported motion for

14

summary judgment. *Macuba v. DeBoer*, 193 F.3d 1316, 1325 (11th Cir. 1999). In *McMillian v. Johnson*, 88 F.3d 1573 (11th Cir. 1996), upon which *Macuba* relies, the Eleventh Circuit explained that, even if a declarant's out-of-court statement might be admissible at trial for impeachment, "such impeachment evidence is not substantive evidence of the truth of the statements . . . . Such potential impeachment evidence, therefore, may not be used [at the summary judgment stage] to create a genuine issue of material fact for trial." *Id.* at 1584 (brackets added). Because LOSAL has established only that Mr. Polhemus's statements might be admissible at trial for impeachment purposes, the statements cannot be used to defeat Defendants' summary judgment motion. In sum, having carefully reviewed the evidence, the court finds that Mr. Polhemus's alleged statements to Mr. Salatto and Mr. Lovvorn, as recounted in their affidavits and deposition testimony, are inadmissible hearsay which cannot be considered in ruling on the present summary judgment motion.

In light of the foregoing ruling, the undisputed evidence establishes that LOSAL's own expert, Mr. Polhemus, "h[as] no opinion" as to whether on August 1, 2002, the problems he identified with the airframe "would have existed . . . to such an extent as to render the aircraft not airworthy at that time," or whether "any problems with the engine would have existed . . . which may have led to the cracked case or which would have rendered the aircraft not airworthy." (Polhemus Aff. ¶¶ 6-7.) Thus, while Mr. Polhemus opines that, as of August 8, 2005, the aircraft "was not airworthy" (Polhemus Aff. ¶ 5), his testimony cannot be relied

upon to create the necessary genuine issue of material fact as to the condition of the aircraft three years earlier at the time of purchase.

The only other evidence relied upon by LOSAL is Mr. Salatto's attestation that during LOSAL's ownership of the aircraft, LOSAL kept the aircraft in Auburn, Alabama, in a hanger "shielded from the elements." (Pl. Summ. J. Resp. at 13 (citing Salatto Aff. at 2).) The court, however, finds that this remaining evidence provides, at most, "[a] mere scintilla of evidence," which "will not suffice to overcome a motion for summary judgment."[10] *Young v. City of Palm Bay,* 358 F.3d 859, 860 (11th Cir. 2004); *Fedolfi v. Banyan Air Servs., Inc.*, 258 F. App'x 274, 276 (11th Cir. 2007) (The party opposing a properly-supported summary judgment motion "must show more than a 'mere scintilla of evidence'" to create a genuine issue of fact for trial.) Construing the evidence in the light most favorable to LOSAL, all LOSAL has shown is that on August 8, 2005, nearly three years after LOSAL purchased the aircraft, the aircraft was not airworthy or otherwise in the condition represented by Defendants. Given nothing more than this showing, the court finds that Defendants' Motion for Summary Judgment is due to be granted.

---

[10] LOSAL presents absolutely no evidence to support its theory that Mr. Herndon discovered the aircraft's corrosion and engine problems when he conducted his inspections but, acting in concert with Defendants, did not disclose the defects to LOSAL. (*See* Pl. Summ. J. Resp. at 8, 15); *United States v. Cardona*, 302 F.3d 494, 497 (5th Cir. 2002) ("arguments in brief are not evidence"). Rather, the theory is based on nothing but mere speculation and, thus, warrants no discussion. *Cordoba v. Dillard's, Inc.*, 419 F.3d 1169, 1181 (11th Cir. 2005) ("Speculation does not create a *genuine* issue of fact; instead, it creates a false issue, the demolition of which is a primary goal of summary judgment." (internal quotation marks omitted)).

## V.  CONCLUSION

For the foregoing reasons, it is ORDERED that Defendants Southern Aircraft Sales and Sid Hall's Motion for Summary Judgment (Doc. # 45) is GRANTED.

Done this 24th day of October, 2008.

       /s/   W.  Keith Watkins
       UNITED STATES DISTRICT JUDGE